UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


PHYLLIS TOWN,                                          Civ. No. 3:10-CV-01301-AC

                    Plaintiff,                          FINDINGS AND
                                                        RECOMMENDATION
        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

_____

ACOSTA, Magistrate Judge:

Claimant Phyllis Town ("Town") seeks judicial review of the Social Security Commissioner's ("the Commissioner") final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-434 (2010). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, the court finds that the decision of the

FINDINGS AND RECOMMENDATION    1                              {NMS}

Commissioner should be remanded for reconsideration.

*Procedural History*

Town filed for benefits on December 20, 2006, alleging a disability onset date of July 14, 2006. Town's claim was denied initially on April 17, 2007, and again denied on reconsideration on June 12, 2007. On August 5, 2009, a hearing was held before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on September 2, 2009, finding Town not disabled. Town requested review of this decision, but the Appeals Council denied this request on August 20, 2010, making the ALJ's decision the final decision of the Commissioner. Town filed for review of the final decision in this court on October 19, 2010.

*Factual Background*

Town applied for benefits claiming to be disabled due to alleged impairments consisting of pain in her hands and back, obesity, sleep problems, depression, and bipolar and attention deficit disorders.

On April 26, 2006, Town visited Dr. Richard Johnson, M.D. ("Dr. Johnson"), to complete a "Medical Certification" requested by Town's employer, Portland General Electric ("PGE"). Dr. Johnson concluded that Town was able to perform "work of any kind," including the essential functions of her job, with reasonable accommodation, specifically periodic office visits. (Tr. 450-451.)

On July 17, 2006, Town underwent prolonged surgery performed by Patricia Winn, M.D. ("Dr. Winn"), consisting of a total abdominal hysterectomy and an incontinence procedure.[1] (Tr.

---

[1] Town was originally prepped for the surgery on March 7, 2006, but the surgery had to be abandoned due to difficulty intubating Town. (Tr. 224.)

338.) After the surgery, Town reported to Dr. Winn that she was experiencing pain in her arms and hands, including numbness and tingling in those areas. (Tr. 338.) The following day a CT scan was performed on Town to investigate her upper extremity pain. (Tr. 323.) The results of the CT scan were normal. Town was discharged from the hospital on July 20, 2006. (Tr. 334.) On July 24, 2006, Town reported to Dr. Winn that her arm and hand symptoms worsened at night. (Tr. 338.)

On August 1, 2006, two weeks after Town's surgery, Town reported to Dr. Winn greater pain in her left hand than right, and Dr. Winn documented that the strength in Town's hands had returned. (Tr. 338.) Dr. Winn expressed surprise at Town's report of continued left hand pain because "her left arm was the least involved with her initial symptoms." (Tr. 338.) Town's arm and hand symptoms continued to persist, so Dr. Winn requested that Town be evaluated for nerve damage.

On August 15, 2006, Town returned to Dr. Winn for a post-surgery check-up and complained of continued pain in the left hand, particularly in the evenings. (Tr. 340.) Town reported that her hand pain subsided by applying pressure on her left hand and her left hand strength was still somewhat diminished. (Tr. 340.) Even so Town's right arm grip, triceps, biceps, and shoulders were rated five out of five for strength. (Tr. 340.) Town's left arm rated four out of five for grip, triceps, and biceps, and five out of five for shoulder strength. (Tr. 340.) On August 17, 2006, Town saw Dr. Winn to check her surgical incision and again reported fairly significant left hand pain. (Tr. 340.) On August 24, 2006, five weeks after Town's surgery, Town reported ongoing left hand pain to Dr. Winn, specifically in the first, second, and third digits. (Tr. 344.)

On August 30, 2006, Town reported to Dr. Winn that the pain in her left hand continued, and Town needed to take pain medication, Vicodin, for her hand often in the evenings. (Tr. 344.) Upon examination, Dr. Winn documented that Town had good grip in her left hand but noticed weakness

FINDINGS AND RECOMMENDATION    3                                    {NMS}

in Town's first, second, and third digits. (Tr. 344.) Dr. Winn reiterated that Town's complaint after surgery about reduced strength in her right hand, compared to her left, had resolved by discharge, and the CT-scan was negative. (Tr. 344.) Dr. Winn stated that Town's reported left hand pain seemed to start after her discharge. (Tr. 344.) Dr. Winn concluded that further neurologic evaluation was needed.

On September 8, 2006, Town visited Dr. Winn for another post-surgery check-up and again reported continued pain in her left hand. (Tr. 345.) Dr. Winn documented that Town's strength in her left hand was rated at three out of five, compared to her right hand that rated a five out of five. (Tr. 345.) Because Town's employment as a data processor required continuous use of her hands, Dr. Winn concluded that she could not return to work pending further evaluation. (Tr. 345.)

On September 26, 2006, Kenneth H.Z. Isaacs, M.D., P.S. ("Dr. Isaacs"), performed a "Neuromuscular Consultation" on Town at Dr. Winn's request. (Tr. 271.) Dr. Isaacs's consultation revealed that Town had pain in the left hand, coolness of her extremity, tenderness, and sensory loss in several digits. (Tr. 278.) Town told Dr. Isaacs that she had never experienced injury or pain to her neck, shoulder, arms, or hands prior to the surgery or received therapy on these areas, except for childhood injuries involving a laceration and a burn. (Tr. 272.) Dr. Isaacs concluded that the examination results showed no evidence of sensory or motor damage, but that there was evidence of mild neuropathies at the wrists and probable nerve injury in the left forearm-elbow area. (Tr. 280.)

On October 10, 2006, Town underwent a "Physical Capacities Assessment" performed by Dr. Johnson. Dr. Johnson concluded that so long as Town was taking her medications, she was not limited in her ability to function under stress or engage in interpersonal relations. (Tr. 453).

On November 28, 2006, Town underwent a nerve conduction study of her left hand at Oregon Health Sciences University ("OHSU"). The results were normal, with no evidence of peripheral nerve problems, but OHSU personnel nonetheless wanted Town to undergo an MRI of her neck and to begin hand therapy. (Tr. 341, 466.)

On November 29, 2006, Amy Harper, M.D. ("Dr. Harper"), reviewed Town's medical records and noted that Town had been unable to work as an administrative assistant since her surgery due to her hand pain. (Tr. 353.) Dr. Harper noted that Town had some difficulty with her activities of daily living ("ADLs"). (Tr. 353.) Dr. Harper concluded there were no deficits in Town's attention, memory, or concentration. (Tr. 355.) In evaluating Town's upper extremities, Dr. Harper found that Town had full strength in the shoulder, biceps, triceps, and wrists, but diminished strength in her left hand. (Tr. 355.)

On December 4, 2006, Town underwent an "Upper Extremity Evaluation" at Saint Anthony Hospital Outpatient Physical Therapy Center. (Tr. 349.) Town also received a cervical spine MRI which revealed mild degenerative disc disease involving the C3-4, C4-5, and C5-6 discs. (Tr. 306.) On December 11, 2006, Dr. Winn reviewed Town's MRI and found that Town had some degenerative disc disease. (Tr. 341.)

On January 30, 2007, Town visited Gary Leno, PMHNP ("Dr. Leno"), and underwent a "Mental Status Report." The "Mental Status Report" indicated Town was managing her ADLs well, was able to participate and communicate in group activities, but had difficulty staying on task and focused. (Tr. 387-89.)

On February 23, 2007, Peter LeBray, Ph.D. ("Dr. LeBray"), completed a "Psychiatric Review Technique" on Town. Dr. LeBray concluded that Town had non-severe and coexisting non-mental

impairments within the Affective Disorder listing, which is 12.04. (Tr. 390.) Dr. LeBray determined that Town's disorder was "depression/anxiety (reactive distress) v. h/o Bipolar/cyclic," an impairment that does not precisely satisfy specific diagnostic criteria outlined on the form. (Tr. 393.) Dr. LeBray also determined that Town was mildly restricted in her ADLs, had difficulty with social functioning, and concentration, persistence, and pace. (Tr. 400.) Dr. LeBray concluded that Town had no episodes of extended decompensation and, thus, failed to establish the presence of the "C" criteria. (Tr. 400-01). Dr. LeBray observed that Town was alert and did not exhibit "apparent deficits in attention, memory or concentration." (Tr. 402.) Dr. LeBray commented that Town has a history of psychological impairments, but "they do not appear to be currently significantly lim[i]ting." (Tr. 402.) Dr. LeBray concluded, based on objective medical evidence and Town's reported ADLs, that Town was only partially credible. (Tr. 402.)

On April 12, 2007, Linda L. Jensen, M.D. ("Dr. Jensen") assessed Town's Residual Functional Capacity ("RFC"). (Tr. 404-411.) She concluded that Town could perform light work, with occasional handling and fingering of the left upper extremity and frequent handling and fingering of the right upper extremity. (Tr. 411.)

On April 16, 2007, Tia M. Brungardt ("Brungardt"), a disability examiner for the Social Security Administration ("SSA"), completed Town's disability determination and determined that Town had a primary diagnosis of affective/mood disorders and a secondary diagnosis of bipolar. (Tr. 51.) Brungardt determined that Town was not disabled through the date of current determination. (Tr. 51.)

On April 23, 2007, Town saw Michael Oglesbay, D.O. ("Dr. Oglesbay"), and Dr. Oglesbay documented that Town was experiencing pain in both hands and both feet. (Tr. 497.) In May 2007,

FINDINGS AND RECOMMENDATION    6                                    {NMS}

an MRI revealed that Town's L5-S1 vertebrae "demonstrate[d] most prominent vertebral body endplate disease with marked narrowing and moderate bulging of the disk." (Tr. 429.)

On June 5, 2007, Dr. Oglesbay reviewed Town's medical documentation regarding her arm and hand symptoms and concluded that none of the studies performed on Town had been positive for the source of her reported symptoms. (Tr. 414.) Dr. Oglesbay concluded that "to date no laboratory imaging or tests have validated this subjective claim [of Town's claims of pain in her arms and hands]." (Tr. 415.) On June 12, 2007, Town visited Dr. Leno of Pendleton Professional Services. Town reported that she was experiencing significant stress, especially relating to finances and family issues, sleeping problems, and difficulty concentrating. (Tr. 435.) Dr. Leno documented that Town's ADLs were satisfactory and Town exhibited good eye contact and speech. (Tr. 435.) Dr. Leno recommended that Town remain on her current medications and begin regular counseling or therapy. (Tr. 435.)

On July 10, 2007, Town again met with Dr. Leno and reported that she felt more stable on the medications treating her psychological symptoms but still felt lethargic and irritable. (Tr. 436.) Dr. Leno noted that Town should benefit from beginning Cymbalta medication and should consider monitoring for mood or sleep changes. (Tr. 436.) Dr. Leno also reminded Town about the availability of crisis services. (Tr. 436.) On August 17, 2007, Town visited Dr. Giffords and reported that her back pain had not improved. (Tr. 475.) Dr. Giffords wrote that Town "has cervical disc bulging in the cervical spine causing bilateral hand numbness." (Tr. 475.)

On September 17, 2007, Town visited Dr. Gifford, reporting a possible partial dislocation in her left shoulder. (Tr. 472.) However, Dr. Gifford reported he "felt nothing with range of motion" in Town's shoulder. (Tr. 472.) Dr. Gifford stated that Town had an appointment at the

FINDINGS AND RECOMMENDATION    7                                {NMS}

OHSU Pain Clinic on October 11, 2007. (Tr. 472.)

On October 17, 2007, Sharon Eder, M.D. ("Dr. Eder"), again assessed Town's physical RFC and reviewed all of Town's studies and tests. (Tr. 445.) Dr. Eder concluded that Town could engage in light work, noting that "no laboratory imaging or tests have validated this subjective claim." (Tr. 445.)

On October 18, 2007, Beatrice Jackson ("Jackson"), a disability examiner for the SSA, reconsidered Town's disability determination from April 17, 2007. (Tr. 52.) Jackson determined that Town had a primary diagnosis of disorders of the back (discogenic and degenerative) and a secondary diagnosis of affective/mood disorders. (Tr. 52.) Jackson evaluated all of the previous medical evidence Town submitted for the April 17, 2007, disability determination, as well as two additional records from Doctors Leno and Gifford that were dated after the April 17, 2007, determination. (Tr. 60-61.) Jackson affirmed the finding that Town was not disabled through the date of current determination. (Tr. 52.)

Also on October 18, 2007, Robert Henry, Ph.D ("Dr. Henry"), completed a mental summary of Town's psychological history and concluded that Town's mental impairments were non-severe. (Tr. 437.) Dr. Henry noted that Town had a history of depression but that her thought process was organized, logical, linear, and goal-oriented. (Tr. 437.) Dr. Henry concluded that Town's mood was stable, and she was able to shop, clean, and cook with her psychological symptoms. (Tr. 437.) Dr. Henry also noted that Town alleged pain and numbness in her hands. (Tr. 437.) Dr. Henry affirmed the April 17, 2007, disability determination that Town had non-severe mental impairments.

On September 17, 2008, Town visited Dr. Oglesbay and stated she continued to experience pain in her ribs, back, arms, and reported a new complaint of ankle pain. (Tr. 492.) Dr. Oglesbay

FINDINGS AND RECOMMENDATION    8                                    {NMS}

found no abnormalities in her ankles or extremities. (Tr. 492.) On October 14, 2008, Town visited Dr. Oglesbay reporting pain in her left shoulder and hip. (Tr. 491.) Dr. Oglesbay indicated that Town's x-rays revealed no degenerative changes, and informed Town about osteopathic manipulation techniques. (Tr. 491.) On January 1, 2009, Town again visited Dr. Oglesbay, complaining of back pain that persisted despite use of pain medication. (Tr. 489.) Dr. Oglesbay reported that Town had several tender points on her thoracic spine and refilled Town's prescriptions for pain medication. (Tr. 489.)

On August 5, 2009, Town testified at an administrative hearing before the ALJ. Town stated that her mental health medications controlled some of her symptoms but not her depression, anger issues, or mood control. (Tr. 36.) Town also testified that she was unable to perform any household chores and required assistance for her personal care. (Tr. 26-28.) Town stated that she was unable to bathe without assistance, stand upright to assist in cooking, and wash laundry. (Tr. 26-27.) She stated that her arm pain is a factor in her ability to shower, and she has decided not to bathe when her arm pain was severe or she lacked assistance. (Tr. 26.) Town also testified that she was able to shower and dress herself, briefly oversee cooking in the kitchen, drive the car if someone navigated, and purchase groceries with assistance. (Tr. 26-27.) Town told the ALJ that she spent most of her day sleeping or sitting in her bedroom with her dog and did not watch television or read. (Tr. 28.)

With respect to her pain, Town explained how her back muscles invariably spasm and tighten up, and sometimes she experiences pain and twitching in her arms and legs. (Tr. 29.) Town testified that these back episodes occur once or twice a week and can debilitate her for days. (Tr. 30.) The medication Town takes for these symptoms cause her to be sleepy, less focused, and forgetful. (Tr. 30.) Town also explained that she experienced arm pain and tingling constantly, which caused her

FINDINGS AND RECOMMENDATION    9                                    {NMS}

to drop items sometimes and prevented her from writing or typing for more than five minutes.  (Tr. 32.)  Town stated the medication she takes for her arm pain caused sleepiness.  (Tr. 33.)

Kay Wise, an impartial vocational expert ("VE"), testified at Town's hearing.  The VE described Town's work history as a volunteer coordinator, bookkeeper, receptionist, administrative assistant, and retail worker.  (Tr. 43-44.)  The ALJ posed two hypotheticals to the VE.  First, the ALJ asked the VE whether someone with Town's work history and education could perform an RFC that entailed light work, able to occasionally stoop and crouch, frequently crawl, kneel, balance and climb ramps or stairs, never climb ladders, frequently handle and finger with the right hand, occasionally handle and finger with the left hand, and avoid concentrated exposure to vibration.  (Tr. 44-45.)  The VE replied that the hypothetical individual could perform all of these previous positions except the administrative assistant.  (Tr. 45.)  Second, the ALJ asked the VE whether a person with the same abilities as in the first hypothetical could perform these positions with mental impairments, but an individual who is able to understand, remember, and carry out simple instructions, to perform routine tasks, and to interact with others in a superficial manner.  (Tr. 45.)  The VE replied that carrying out simple instructions was not consistent with past relevant work, but such a person could be employed as an office helper, merchandise marker, and library helper.  (Tr. 45-46.)  Mr. Ratliff asked the VE about the extent of hand and arm use in merchandise marker and library helper positions.  (Tr. 46-48.)  The VE replied that these positions require some hand activity that can be accomplished with use of both hands.  (Tr. 47-48.)

On September 2, 2009, the ALJ issued a decision denying Town's application, concluding that Town was not disabled within the meaning of the Act.

On October 14, 2009, Town's attorney gave the Appeals Council notice of Town's decision

to appeal and enclosed two additional pieces of evidence that were not included in the record from Town's treating physician to be reviewed in the Council's decision. (Tr. 50.) The first was a August 7, 2009, letter from Jeremy Hitchcock, MD ("Dr. Hitchcock"), Town's family physician, which outlined multiple conditions by which Town should be considered permanently and severely disabled. (Tr. 210.) The conditions included chronic back pain (including degenerative disc disease), bipolar disorder, post-surgery status with hormone replacement, hyperlipidemia, hypertension, narcolepsy, and morbid obesity. (Tr. 210.) The second piece of evidence was a questionnaire completed by Dr. Hitchcock on September 8, 2009, indicating that, during Town's three appointments between April to August in 2009: (1) Town did not malinger or embellish her symptoms; (2) Town has severe mental health conditions preventing her from maintaining any type of work; (3) Town's degenerative disc disease limits her to more than fifteen minutes of sitting, among other tasks; and (4) Town's combination of physical and mental impairments prevent her from maintaining any work. (Tr. 519-21.)

*Disability Analysis*

The Commissioner engages in a five-step sequential process in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 416.909; 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed"

FINDINGS AND RECOMMENDATION    11                                           {NMS}

impairment in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's RFC. The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 416.920(e); Social Security Ruling ("SSR") 96–8p.

The ALJ uses this information at step four to determine if the claimant can perform her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 416.920(g); 416.966.

### *Summary of the ALJ's Findings*

The court reviews the Commissioner's decision to ensure the proper legal standards were applied and the findings were supported by substantial evidence in the record. 42 U.S.C. § 405(g);

*Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). After engaging in the five-step disability analysis, the ALJ determined that Town has not been disabled within the meaning of the Act since July 14, 2006, through the date of the ALJ's decision. (Tr. 9.)

I.    Steps One and Two

At step one, the ALJ determined that Town had not engaged in substantial gainful activity ("SGA") because Town's work as a volunteer for a domestic violence crisis line did not earn Town enough money to be considered SGA. (Tr. 11.) Because Town has not engaged in SGA since July 14, 2006, the alleged onset date, the ALJ proceeded to step two.

At step two, the ALJ determined which of Town's symptoms were severe and non-severe. The ALJ concluded that Town's severe impairments consisted of degenerative disc disease, hand numbness and weakness, and obesity. (Tr. 11.) The ALJ determined that the following impairments were not severe: sleep apnea, narcolepsy, spina bifida occulta, depression, post-traumatic stress disorder, bipolar disorder, and attention deficit disorder. (Tr. 11-12.) The ALJ's specific findings as to each impairment are detailed below.

A.    *Degenerative disc disease*

The ALJ relied on Town's May 2007 lumbar spine MRI in finding Town's degenerative disc disease severe. (Tr. 11.) Even so, the ALJ concluded that Town's degenerative disc disease was not as limiting as alleged and that there was no evidence to support that Town's claim that her back "locks up." (Tr. 14.) The ALJ acknowledged that Town's cervical spine MRI from 2006 showed mild disc degeneration, Town's lumbar spine MRI from 2007 showed narrowing and a bulging disk, and Town's spine CT scan results were normal. (Tr. 14.) The ALJ concluded that the opinion of Dr. Nemecek, a neurosurgery specialist at the OHSU Pain Clinic, was entitled to "significant

weight." (Tr. 14.) Dr. Nemecek evaluated Town in October 2007 and concluded that Town's fractured spine was fusing together at the L5/S1 junction, and Town's pain from this fracture would improve with time and conservative treatment. (Tr. 14.) Lastly, the ALJ noted that Dr. Oglesbay suggested Town undergo a decompression of her lumbar and cervical spine, but the record did not indicate Town had undergone this procedure. (Tr. 14.)

B.      *Hand numbness and weakness*

Regarding Town's hand numbness and weakness, the ALJ concluded that this was a severe impairment because Town's hand condition limits her ability to perform employment duties, most notably typing. (Tr. 11.) The ALJ discussed how Town's health care providers have "struggled" to diagnose these symptoms. (Tr. 13.) The ALJ explained that Town underwent a nerve conduction study by Dr. Isaacs in September 2006 that "was normal except for mild neuropathy in both wrists, with a likely nerve injury in the left forearm." (Tr. 13.) Dr. Isaacs suggested Town be referred to OHSU for additional tests. The ALJ noted that Town's November 2006 nerve conduction study results were normal. The ALJ concluded that Dr. Isaacs testimony was entitled to "weight to the extent it is consistent with the other evidence." (Tr. 13.)

The ALJ also referred to Dr. Oglesbay's conclusion that Town's claimed impairment had not been validated by objective evidence and Dr. Eder's RFC from October 2007 which concurred with earlier assessments of Town's hand and arm complaints. (Tr. 13.)

The ALJ gave significant weight to Dr. Winn's observations that Town's pain resolved after her she was discharged from the hospital after surgery, but also that she subsequently complained of significant pain in her arm and hands, which made typing difficult at work. (Tr. 14.) The ALJ also gave great weight to Dr. Jensen's assessment and RFC, because Dr. Jensen synthesized evidence

from several of Town's medical providers. (Tr. 14.) The ALJ quoted Dr. Jensen's report, stating

that that the April 2007 RFC gives Town "every possible imaginable benefit of the doubt" in light

of the absence of a clear diagnosis of Town's hand and arm symptoms. (Tr. 14.)

     *C.*    *Obesity*

     The ALJ concluded that Town's obesity was a severe impairment because, at five feet five

inches and 260 pounds, Town had a Body Mass Index ("BMI") of 43.3. Town's BMI is considered

"extremely obese" under federal guidelines. The ALJ noted that a high BMI does not correlate to

functional limitations but may speak to the extent of Town's impairment. (Tr. 11.) Also, based on

evidence in which Town's medical providers have diagnosed her with obesity, the ALJ concluded

that Town was severely impaired by obesity. (Tr. 11.) The ALJ noted that the record does not

contain much information about Town's attempts to treat her obesity, and the record suggests that

Town exercises very little. (Tr. 15.) The ALJ recognized that Town has been on diets, but stated

that the diets have not significantly reduced her weight. (Tr. 15.)

     *D.*    *Sleep Apnea and Narcolepsy*

     Regarding Town's assertion that she has sleep apnea and narcolepsy, the ALJ determined that

there was little or no medical evidence, such as laboratory reports or sleep studies, to support these

claims. (Tr. 11.) The ALJ concluded that Town's testimony that she tends to fall asleep during the

day is one of Town's admitted side effects of her medication regimen. (Tr. 11-12.)

     *E.*    *Spina Bifida Occulta*

     In discussing Town's statement she has spina bifida occulta, the ALJ evaluated the medical

evidence and found that this condition was not separate from Town's severe degenerative disc

disease. (Tr. 12.) Thus, the ALJ did not treat spina bifida occulta as a separate severe impairment.

(Tr. 12.)

F.    *Depression and Post-Traumatic Stress, Bipolar, and Attention Deficit Disorders*

Regarding Town's claims of depression, post-traumatic stress disorder, bipolar disorder, and attention deficit disorder, the ALJ stated that the medical record contains no "longitudinal history of mental health diagnosis or treatment, though it includes references to [Town's] history of psychological problems." (Tr. 12.) In making this determination, the ALJ relied on Town's "Mental Status Report" and Town's "Psychiatric Review Technique." (Tr. 12.) The ALJ noted that Town herself testified that she has done well on medication for bipolar and attention deficit disorders.

Based on an examination of the record evidence, the ALJ concluded that "no medical evaluation found that these conditions limit her ability to work or otherwise cause major problems." (Tr. 12.) The ALJ indicated that he relied upon three sources in making this determination: (1) Dr. Henry's Mental Summary report; (2) Town's Medical Certification completed by Dr. Johnson and submitted to an employer; and (3) Town's "Physical Capacities Evaluation."

The ALJ concluded that "[t]he medical evidence does not support a recent diagnosis of bipolar disorder and attention deficit disorder." (Tr. 12.) The ALJ explained that Dr. LeBray's "Psychiatric Review Technique" conclusion that Town has either bipolar disorder or depression with reactive anxiety was based on diagnoses "by history," which are "are not subject to an active, current course of treatment of therapy." (Tr. 12.) The ALJ explained that the medical evidence does not show that the twelve-month durational requirement was met for these impairments.

Lastly, the ALJ concluded that these impairments, when considered in isolation and in combination, are not severe because they do not pose more than a minimal limitation on Town's ability to engage in basic mental activities. (Tr. 12.)

II.    Step Three

At step three, the ALJ discussed each of Town's serious impairments and determined that Town's impairments do not meet or medically equal a listing as set forth in the regulations. (Tr. 12.) Regarding Town's degenerative disc disease, the ALJ concluded that the medical evidence does not meet the impairment standards of Listing 1.02, major dysfunction of joint(s), or Listing 1.04, disorders of the spine. (Tr. 12.) Regarding Town's hand numbness and weakness, the ALJ found that there was no specific listing for this impairment, and Town's symptoms "do not rise to a level that meets the listing for similar impairments." (Tr. 12.) Regarding Town's obesity, the ALJ concluded that the medical evidence does not show an impairment caused or worsened by obesity, including as a musculoskeletal condition outlined in Listing 1.00(Q), effects of obesity. (Tr. 12.)

III.    Claimant's RFC

The ALJ concluded that Town has the RFC:

> to perform light work as defined in [the regulations] except she can occasionally stoop and crouch; frequently crawl, balance, and climb stairs; she cannot use ladders; she can perform frequent handling and fingering with the right hand, with occasional fingering and handling with the left hand; and the claimant should avoid concentrated exposure to vibration.

(Tr. 12.) The ALJ's RFC differed from the two analyses conducted by Dr. Eder in October 2007 and Dr. Jensen in April 2007, in two ways. (Tr. 15.) First, while Dr. Jensen's assessment stated that Town should be able to crouch and stoop frequently and climb ladders occasionally, the ALJ determined Town's RFC should be more limited to prevent exacerbation of Town's degenerative disc disease, given her continued obesity. (Tr. 15.) The ALJ therefore determined that Town's RFC is limited to occasional crouching and stooping and no use of ladders. (Tr. 15.) Second, Dr. Eder's assessment stated that Town be limited to "no constant" handling or fingering, but the ALJ

FINDINGS AND RECOMMENDATION    17                                    {NMS}

determined Town could engage in handling or fingering frequently in her right upper extremity and occasionally in her left upper extremity. (Tr. 15.) The ALJ limited Town's RFC regarding handling or fingering "[i]n light of the increased pain [Town] feels in the left arm." (Tr. 15.) The ALJ concluded that the assessments of Dr. Eder and Dr. Jensen were consistent with the RFC, aside from the two differences mentioned. (Tr. 15.)

The ALJ concluded that Town is able to perform her RFC on the medication she currently takes. (Tr. 15.)

The ALJ considered statements from Town's sister and Town's daughter and concluded that these third-party reports of Town's limitations regarding ability to carry groceries, cook, and clean were not inconsistent with the ALJ's RFC. (Tr. 15.)

IV.     Step Four

At step four, the ALJ concluded that Town is capable of performing past relevant work in accounts payable or as a receptionist because the work-related activities of these positions is within Town's RFC. (Tr. 15.)

V.      Step Five

At step five, the ALJ concluded that Town was capable of performing other work that exists in substantial numbers in the national economy. In response to the ALJ's hypothetical that a person with Town's age, education, work background, and RFC could perform Town's past relevant work, the VE answered in the affirmative. (Tr. 15-16.) The VE stated that such a person could perform work in accounts payable, a sedentary and skilled position, or as a receptionist, a sedentary and semi-skilled position. (Tr. 16.)

The VE also testified that such a person could perform work as a volunteer coordinator, a

sedentary and skilled position, which is a position that Town held in 2007 and 2008. (Tr. 16.) The ALJ, however, did not view this position as past relevant work because: (1) Town did not earn enough money in this position to be considered substantial gainful activity; and (2) Town did not maintain employment in this position for the requisite time period of two years for this SVP 7 skill level position. (Tr. 16.)

*Discussion*

Town objects to the ALJ's disability determination on the following grounds: (1) the ALJ ignored evidence of Town's serious mental impairment, specifically the evidence provided by Town and Dr. Hitchcock, and failed to recognize a longitudinal treatment record or order a consultative examination; (2) the ALJ incorrectly concluded that Town's combined impairments did not meet a disability listing; (3) the ALJ created an RFC that was unsupported by the record and posed a hypothetical to the VE that did not reflect all of Town's limitations; and (4) the ALJ erred in relying on testimony that Town was capable of performing past relevant work; and (5) the ALJ erred in determining Town can perform job duties that exist in significant numbers in the national economy. The court will address each objection in turn.

I.    Step Two Arguments

Town challenges the step two findings in four ways. First, Town argues that the ALJ ignored substantial evidence of her mental impairment, notably Town's own testimony. Second, Town argues that the ALJ ignored the findings of Dr. Hitchcock. Third, Town argues the ALJ failed to consider the combined effects of her obesity with her mental impairments. Fourth, Town argues the ALJ erroneously relied on Dr. LeBray's conclusions.

A.      *Town's Testimony*

Unless a claimant is malingering, an ALJ must give clear and convincing reasons to discount

a claimant's credibility:

> [w]ithout affirmative evidence showing that the claimant is malingering, the
> Commissioner's reasons for rejecting the claimant's testimony must be clear and
> convincing. If an ALJ finds that a claimant's testimony relating to the intensity of
> [her] pain and other limitations is unreliable, the ALJ must make a credibility
> determination citing the reasons why the testimony is unpersuasive.

*Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999) (internal citations omitted). Here, the

extent of the ALJ's credibility findings were that doctors struggled to diagnose her complaints of arm

and hand pain, Town lost her last full-time employment for reasons unrelated to medical problems,

and Town's medications caused her to feel sleepy, but allowed her to concentrate and focus, and

enabled her to manage her finances. (Tr. 11-15.) None of the ALJ's findings explain why Town was

herself not credible.

During the administrative hearing, Town told the ALJ that her mental impairments negatively

impacted her ability to find work, keep work, exercise good judgment, assess her physical

limitations, and interact with others. (Tr. 34-36.) The ALJ asked Town whether her medications

controlled her mental health symptoms. (Tr. 36.) Town stated that her medications enabled her to

manage her finances and cease wasteful spending, but they did not manage her depression, anger,

or mood issues. (Tr. 35-36.) Town told the ALJ that her Hydrocodeine and Ultram medications

negatively affected her ability to focus and remember the names of her children. (Tr. 31.)

The court agrees that the ALJ failed to give clear and convincing reasons to reject Town's

testimony as not credible.

Town also argues that the ALJ improperly evaluated her claimed hand and arm pain. When

FINDINGS AND RECOMMENDATION    20                                    {NMS}

analyzing a claimant's subjective complaints, the ALJ must adhere to the following standard:

> Once a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain. If the ALJ finds the claimant's pain testimony not to be credible, the ALJ must specifically make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. If there is no affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of symptoms.

*Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citations and quotations omitted). A lack of medical evidence cannot form the sole basis for discounting pain testimony, but it is a factor the ALJ may consider in the credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ concluded that Town's impairments could reasonably be expected to produce her alleged symptoms, but determined Town's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they are inconsistent with the [RFC]." (Tr. 13.) The Commissioner argues that the ALJ gave sufficient reasons for his credibility determination: first, that objective medical evidence did not support the severity of Town's complaints and, second, that Town stopped working at her last full-time job because her employer went out of business and not because of her mental or physical impairments.

The Commissioner's argument is unpersuasive. The ALJ failed to give clear and convincing reasons for discrediting Town's testimony. An ALJ may not reject pain testimony based only on a lack of objective medical evidence. Furthermore, the ALJ mischaracterized Town's testimony regarding her medications. The ALJ concluded that Town "has done well on medications" for bipolar and attention deficit disorders, but this ignored the impact of Town's mental symptoms that

FINDINGS AND RECOMMENDATION    21                                    {NMS}

were not controlled by medication. (Tr. 12.) In particular, the ALJ failed to explain why he found Town's testimony to be not credible regarding Town's claim that her medication does not help with her depression, anger, and mood.

Second, the ALJ erroneously rejected Town's subjective pain testimony because the ALJ determined that Town left her last full-time employment unrelated to medical reasons. However, a summary of Town's earnings from 1990-2009 indicates that Town was employed with Trebar, Inc. ("Trebar") in 2003 and 2004, earning $9,070 and $10,815 per year, respectively. (Tr. 93.) The summary also indicates that Town worked for PGE from 2004-2007, earning per year $10,005; $25,178; $23,677; and $2,797, respectively. (Tr. 93-94.) According to the SSA "Work Activity Report," Town's last full-time position was with PGE as an administrative assistant and receptionist from 2003 to the alleged onset of disability. (Tr.103-04.) During the administrative hearing, Town stated that she was terminated from PGE after being placed on long-term disability. (Tr. 40.) Although Town did lose a prior position when Trebar went out of business, she was subsequently employed by PGE and was terminated from PGE because she could not perform her job duties. (Tr. 40-41.) Because Town found full-time employment with PGE after Town's recorded employment with Trebar, the company that went out of business, the ALJ's conclusion that Town lost her last full-time position unrelated to any medical problem was erroneous.

The reasons given by the ALJ to discredit Town's testimony are not clear and convincing. "[W}here the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, 'we will not remand solely to allow the ALJ to make specific findings regarding that testimony.'" *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (quoting *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1401 (9th

Cir. 1988) (citation omitted)).  Where such testimony is credited, the court may remand for an award

of benefits, rather than for reconsideration, where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is clear from the record that the
> ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1293 (9th Cir. 1996).

Town's testimony regarding the extent of her mental impairments will be credited because

the ALJ failed to give clear and convincing reasons for discrediting her testimony.  However,

accepting Town's testimony as true would not clearly require the ALJ to find Town disabled because

her physicians have described how Town is able to manage these symptoms.  Thus, the court may

not, at this juncture, justify remand for an award of benefits.  The court must remand for

reconsideration.

### B.    *Dr. Hitchcock's Testimony*

Town asserts that the Commissioner failed to consider evidence Town submitted after the

administrative hearing, consisting of Dr. Hitchcock's letter and questionnaire.  Dr. Hitchcock

evaluated Town three times in 2009.  In a letter dated the same day as Town's administrative

hearing, Dr. Hitchcock stated his conclusion that Town had multiple severe impairments that

prevented Town from finding and maintaining work.  Dr. Hitchcock also signed without comment

a questionnaire, thus concurring with the statements generated by Mr. Ratliff.  These two pieces of

evidence were not evaluated by the ALJ because Town submitted them to the Appeals Council after

the administrative hearing.  The Appeals Council reviewed the additional evidence Town submitted,

since it related to the period before the date of Town's administrative hearing.  The Appeals Council

denied Town's request for review, finding that the evidence "does not provide a basis" for amending

FINDINGS AND RECOMMENDATION    23                                    {NMS}

the ALJ's decision. (Tr. 1-2).

> Regarding a claimant's submission of new evidence, the regulations provide:
>
> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). Material evidence "must bear directly and substantially on the matter in dispute" and there must be a "reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001) (citation omitted).

There is much evidence in the record to contradict the evidence submitted by Dr. Hitchcock. Dr. Oglesbay assessed Town with bipolar disorder and chronic pain in her ribs, arms, and back, as well as pain in her hips, left shoulder, and left ankle. (Tr. 472, 491-92.) Dr. Leno assessed Town with concentration problems but also stated that Town's ADLs and eye contact were good. (Tr. 432.) Dr. Leno observed that Town's thoughts were organized and logical, and she was goal-orientated. (Tr. 432.) Regarding Town's social functioning, Dr. Leno stated that Town was able to participate in social and family gatherings. (Tr. 433.) Dr. Johnson concluded that Town was not unable to perform any of the essential functions of her employment with PGE. (Tr. 450.) Dr. Harper documented that Town was alert and oriented, and Town's speech was clear and fluent. (Tr. 354-55.) Dr. Harper commented that Town's responses to questions were appropriate, and Town showed no deficits in attention, memory, or concentration. (Tr. 354-55.) Thus, the Appeals Council's decision that the evidence provided by Dr. Hitchcock after the administrative hearing did not alter

the ultimate conclusion is not contrary to the weight of the evidentiary record.

C.    *Combined obesity and mental impairments*

Town argues that the ALJ did not consider the combined effect of Town's mental impairments with Town's obesity in evaluating her ability to function. The ALJ must consider the combined effect of all Town's impairments on her ability to function, including whether each alone is sufficiently severe. *See* 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991); Social Security Ruling ("SSR") 85-28 ("[a] claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities."). Because the ALJ erroneously disregarded Town's testimony that her mental impairments were not adequately treated by medication, the ALJ necessarily failed to consider the combined impact of these impairments and, in doing so, the ALJ erred.

D.    *Dr. LeBray's assessment*

In February 2007, Dr. LeBray, an agency medical reviewer, concluded that Town's mental complaints were non-severe. Town argues that the ALJ and Dr. LeBray erroneously ignored evidence of Town's ongoing mental complaints, and the court agrees. The regulations provide that the opinions of treating physicians are favored over those of non-treating physicians. 20 C.F.R. § 404.1527. Town presented evidence from Dr. Oglesbay that Town had bipolar disorder throughout 2007. (Tr. 415, 417, 419, 494, and 497.) According to Dr. Oglesbay, Town reported her bipolar disorder was "being effectively treated." (Tr. 419.) Further, medical records from Good Sheperd in March 2006 also indicated that Town had co-morbidities of depression and "possible bipolar disorder." (Tr. 257.) Town also saw Dr. Leno for medication for her bipolar disorder for six months

{NMS}

in 2006. (Tr. 122-23.)  The ALJ's conclusion that "[t]he medical record does not support a recent

diagnosis of bipolar disorder and attention deficit disorder" is not supported by substantial evidence

in the record.  (Tr. 12.)  The ALJ did not explain why the treatment notes from Dr. Oglesbay, a

treating physician, were rejected, and the ALJ did not explore whether Town still experienced these

symptoms.  Thus, the ALJ again erred by failing to explain why the evidence from Town's treating

physicians was ignored while the evidence from the non-treating physicians was relied upon.

II.    Step Three Arguments

    A.    *Disability Listing*

    Town argues that the ALJ erred in concluding that Town does not meet or equal Listing

12.04 because her impairments markedly impact her ability to socially function and maintain her

ADLs.  Town argues that the medical evidence shows marked impairments, referencing Town's

testimony, the letter of Dr. Hitchcock, and the treatment notes of Doctors Oglesbay, McCoy, and

Johnson.  The ALJ concluded that Town's alleged symptoms were not credible to the extent they are

inconsistent with the RFC but did not explain why Town's testimony was not credible.

    The ALJ failed to give clear and convincing reasons for not crediting Town's testimony, and

this undermines his findings that Town failed to meet or equal a disability under Listing 12.04.

However, in analyzing the entire record, the court finds that Town has not overcome her statutory

burden to prove she meets the requirements of listing 12.04.  The weight of the evidence does not

show marked impacts on Town's ability to socially function and manage her ADLs, as her healthcare

providers, notably Doctors Oglesbay, Leno, Henry, and Johnson, all observed that Town has the

ability to both function socially and manage her ADLs.  Thus, although the ALJ committed legal

error by failing to credit Town's testimony regarding her social functioning and management of

ADLs due to her impairments, the evidence in the record as a whole does not demonstrate marked impacts on Town's functioning sufficient to meet or equal Listing 12.04.

B.    Town's RFC

Town argues the ALJ ignored evidence of Town's impairments in developing Town's RFC. Town's Upper Extremity Evaluation indicated that she could not hold a steering wheel for sustained period of time due to the sensation. (Tr. 349.) Dr. Harper assessed a slight diminishing of four out of five for strength on Town's left hand. (Tr. 355.) The SSA reviewers, Dr. Jensen and Dr. Eder, in assessing Town's functioning, both limited Town's ability to handle and finger. (Tr. 405, 440.) The ALJ evaluated the assessments of the SSA reviewers and determined that Town's RFC should be more limited than the SSA reviewers' assessments. (Tr. 15.) Because the ALJ's RFC is more conservative than the SSA reviewers' RFC, it cannot be said that the ALJ erred in determining Town's RFC regarding her arm pain and numbness. Furthermore, the evidence cited by Town from her primary care physicians does not materially conflict with the ALJ's RFC. On these grounds, the ALJ's findings were not made in error.

However, the ALJ's determination of Town's RFC ultimately cannot stand because it does not properly reflect the extent or combination of her mental impairments with her physical limitations. Thus, the ALJ's RFC is erroneous, and Town is entitled to an RFC that reflects these limitations.

III.    Step Four Argument

Town argues the ALJ erred in concluding that, based on Town's RFC, she was capable of returning to her past work. As discussed above, the ALJ erred failing to give clear and convincing reasons for not crediting Town's testimony. Accordingly, the court agrees that the ALJ's conclusion

is erroneous because it was based on an RFC with unsupported findings of Town's limitations.

IV.    Step Five Argument

Town asserts the ALJ erred in relying upon VE testimony in concluding that Town is capable of returning to work performing a job that exists in significant numbers in the national economy. Again, the ALJ erred failing to give clear and convincing reasons for not crediting Town's testimony. Thus, the ALJ's hypothetical questions posed to the VE were based on inaccurate findings of Town's limitations. Accordingly, the ALJ's conclusion at step five is also in error.

*Conclusion*

For the reasons stated, the decision of the Commissioner denying Town's application should be reversed and remanded to the Commissioner for reconsideration.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due January 3, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this19th day of December, 2011.

JOHN V. ACOSTA
United States Magistrate Judge

FINDINGS AND RECOMMENDATION    28                                    {NMS}